UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GRAHAM CONSTRUCTION SERVICES, INC., | ) ) ) |
| Plaintiff(s), | ) ) |
| vs. | ) ) Case No. 4:11CV1316 JCH ) |
| HAMMER & STEEL, INC., | ) ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Hammer & Steel, Inc.'s Motion to Dismiss, filed December 30, 2011. (ECF No. 61). The matter is fully briefed and ready for disposition.

**BACKGROUND**

Plaintiff Graham Construction Services, Inc. ("Graham") is a Minnesota corporation, with its principal place of business located in Minnesota. (Amended Complaint ("Compl."), ¶ 1). Defendant Hammer & Steel, Inc. ("H&S") is a Missouri corporation, with its principal place of business located in Missouri. (Id., ¶ 2). Graham instituted its first action in the Northwestern Division of the District Court of North Dakota. (Id., ¶ 5). The District Court of North Dakota transferred the case to this Court pursuant to 28 U.S.C. § 1404(a) on July 27, 2011. (Id.).

On or about October 1, 2009, Graham, as subcontractor, entered into an agreement with Industrial Contract Services, Inc., as general contractor, to provide construction services for the Parshall Raw Water Intake Structure project (the "Project") in Parshall, North Dakota. (Compl., ¶ 6). One of the Graham's responsibilities under the contract was to construct a caisson, or shaft for a foundation. (Id., ¶ 7). Graham consulted with H&S, regarding H&S's ability to supply and lease

appropriate drilling equipment for the construction of the caisson. (Id., ¶ 9).[1] H&S had leased equipment to Graham in the past, pursuant to equipment rental agreements. (Id., ¶ 8; Answer, ¶ 8).

According to Graham, H&S made representations that it could provide appropriate drilling equipment for the construction of the caisson. (Compl., ¶ 10). On or about September 17, 2009, H&S provided Graham with a proposal for the design, fabrication, and purchase of a 168" Max Cut Over Reaming Tool ("Over Reaming Tool"). (Id., ¶ 16). Graham maintains H&S further represented that Graham should lease a Sany Model SR 250 Hydraulic Drilling Rig ("Sany Drill Rig") from H&S, to drive the Over Reaming Tool for the construction of the caisson. (Id.). Graham claims that H&S represented to Graham that the only drilling rig that could reach the depths required for the Project was the Sany Drill Rig. (Id.). Graham purchased the Over Reaming Tool in December, 2009, and signed a rental agreement for both the Sany Drill Rig and a 60" Hartfuss heavy duty auger on or about December 3, 2009. (Id., ¶ 19; Answer, ¶ 19).

On or about December 12, 2009, Graham began drilling the pilot shaft with the auger head leased from H&S. (Compl., ¶ 21). According to Graham, during the drilling a component of the Sany Drill Rig snapped, leaving the auger head embedded approximately 115 feet below the surface of the caisson excavation pit. (Id.). Graham attempted numerous times to retrieve the embedded auger head but was not successful. (Id., ¶ 22). Graham maintains it was forced to relocate the site of the caisson excavation pit and drilling platform, thereby incurring significant expenses and delays. (Id). According to Graham, H&S informed Graham that the Sany Drill Rig could not complete the required drilling for the construction of the caisson, and that it therefore would be removing the Sany Drill Rig from the Project. (Id., ¶ 23).

---

[1] While Graham maintains that as part of the consultation, it supplied H&S with a great deal of information regarding the Project, H&S admits only that Graham provided a copy of a geotechnical report. (H&S's Amended Answer and Counterclaim ("Answer"), ¶ 9).

- 2 -

Graham filed a seven-count Amended Complaint as a result of the alleged failure of the Sany Drill Rig.  (ECF No. 59).  The two counts addressed in this Order, Counts IV and V, claim Actual Fraud (Fraudulent Inducement), and Constructive Fraud.  As stated above, H&S filed the instant Motion to Dismiss on December 30, 2011, seeking dismissal of Counts IV and V of the Amended Complaint pursuant Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, because Graham's fraud claims fail to state claims upon which relief can be granted, and because Graham fails to plead its fraud claims with particularity.  (ECF No. 61).

## MOTION TO DISMISS STANDARD

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff.  Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto. Servs., Inc., 432 F.3d 866, 867 (8th Cir. 2005)).  Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party."  Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted).  A motion to dismiss must be granted, however, if the Complaint does not contain, "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  While a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citation omitted); Huang v. Gateway Hotel Holdings, 520 F.Supp.2d 1137, 1140 (E.D. Mo. 2007).  Stated differently, to survive a motion to dismiss the Complaint's factual

allegations, "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted).

## DISCUSSION

### A.  Count IV: Fraudulent Inducement: Actual Fraud

In Count IV of its Amended Complaint, Graham asserts H&S committed "actual fraud/fraudulent inducement" when, after examining the geotechnical information for the Project, it "assured and represented to Graham that the drilling equipment, including the Sany Drill Rig, was the appropriate drilling equipment that could timely complete the construction of the caisson for the Project work." (Compl., ¶ 54(a)). Graham continues to allege that H&S knew or reasonably should have known these assertions were false, but nevertheless intended that Graham would rely on the representations and lease the drilling equipment, which it did. (Id., ¶ 54(c), (e), (f)).

As stated above, in its Motion to Dismiss H&S asserts that Count IV of Graham's Amended Complaint must be dismissed pursuant to Fed.R.Civ.P. Rules 12(b)(6) and 9(b) because (1) Graham fails to state a claim upon which relief can be granted, and (2) Graham fails to plead its fraud claim with specificity. (ECF No. 62, PP. 6-7, 8-9).

In order to succeed on its claim for fraudulent inducement Graham must prove the following elements:  "(1) that [H&S] made certain material representations to [Graham]; (2) such representations were false when made; (3) that [H&S] knew the representations were false; (4) that the representations were made with the purpose of deceiving [Graham]; (5) that [Graham] was, in fact, deceived; (6) [Graham] reasonably relied on the representations in signing the [rental and/or purchase agreements]; and (7) [Graham] suffered damage as a proximate result of the fraudulent misrepresentations." Bracht v. Grushewsky, 448 F.Supp.2d 1103, 1110 (E.D. Mo. 2006), citing Trotter's Corp. v. Ringleader Restaurants, Inc., 929 S.W.2d 935, 939 (1996). See also U.S. for Use

of Bussen Quarries, Inc. v. Thomas, 938 F.2d 831, 833 (8th Cir. 1991) (holding that element three of a claim for fraudulent inducement requires proof of the defendant's knowledge of the representation's falsity, or ignorance of its truth). Graham further must demonstrate that H&S did not intend to perform consistent with the alleged statements, at the time the statements were made. Cole v. Homier Distributing Co., Inc. 599 F.3d 856, 862 (8th Cir. 2010). "[A]bsent such an inconsistent intent there is no misrepresentation of fact or state of mind but only a breach of promise or failure to perform." Craft v. Metromedia, Inc., 766 F.2d 1205, 1219 (8th Cir. 1985) (citations omitted), cert. denied, 475 U.S. 1058 (1986).

Upon consideration, the Court finds it premature to consider whether the allegations in Count IV of Graham's Amended Complaint state a claim for relief, because the Court agrees they lack sufficient particularity as required by Federal Rule of Civil Procedure 9(b). Rule 9(b) states in relevant part as follows: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). "The sufficiency of the pleading under Rule 9(b) depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." U.S. ex rel. O'Keefe v. McDonnell Douglas Corp., 918 F.Supp. 1338, 1345 (E.D. Mo. 1996) (internal quotations and citations omitted). In all cases, however, the party asserting fraud must identify the who, what, when, where and how of the alleged fraud. U.S. ex rel. Costner v. U.S., 317 F.3d 883, 888 (8th Cir.), cert. denied, 540 U.S. 875 (2003). See also Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001) (internal quotations and citations omitted) (in order to comply with Rule 9(b), a plaintiff, "must specifically allege the circumstances constituting fraud, Fed.R.Civ.P. 9(b), including such matters as the time, place and contents of false representations, as

well as the identity of the person making the misrepresentation and what was obtained or given up thereby."). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549 (8th Cir. 1997) (internal quotations and citations omitted).

In the instant case, H&S avers Graham does not attribute the alleged false assurances to a particular H&S employee, nor does it "state *what* facts were allegedly represented by H&S that constituted assurances of 'appropriate drilling equipment.'" (ECF No. 62, P. 9). H&S further maintains Graham alleges neither where nor how the alleged representations were made, nor to whom. (Id.).

Upon consideration, the Court agrees that by failing to provide such basic information as the identity of the H&S employee(s) making the alleged representations, the content of such representations, and the manner in which they allegedly were untrue, Graham has deprived H&S of the opportunity to prepare an effective defense. H&S's Motion to Dismiss with respect to Count IV will therefore be granted. Graham will be granted twenty (20) days from the date of this Order, however, in which to file an Amended Complaint that meets the requirements of Rule 9(b). See Molex Inc. v. Wyler, 365 F.Supp.2d 901, 912 (N.D. Illinois 2005) (holding the proper remedy for failure to plead fraud with particularity is not dismissal of the claims or striking of the pleading, but allowance of an amendment under Rule 15).[2]

## B.      Count V:  Constructive Fraud

In Count V of its Amended Complaint, Graham asserts H&S committed "constructive fraud/fraudulent inducement." (Compl., ¶ 57). The allegations in Count V are identical to those in

---

[2] In light of the Court's decision to grant Graham leave to amend, it need not determine whether the affidavit submitted with Graham's response properly could be considered on this Motion to Dismiss.

Count IV, except that rather than allege H&S "knew or reasonably should have known" the assertions and representations were incorrect, Graham asserts "H&S was ignorant of the truth of these assertions and representations." (Id., ¶ 57(c)).

In order to prove constructive fraud, "a plaintiff must show that a person breached a promise to another during the existence of a confidential relationship." In re Estate of Goldschmidt, 215 S.W.3d 215, 223 (Mo.App. 2006) (citation omitted). "A confidential and fiduciary relationship[3] exists when one relies upon and trusts in another to handle his property or business affairs." Id. at 221 (citation omitted). "To warrant recovery when a fiduciary or confidential relationship is breached, proof of actual fraud is unnecessary, because the breach of any promise made during that relationship will be considered constructively fraudulent." Kratky v. Musil, 969 S.W.2d 371, 377 (Mo. App. 1998) (internal quotations and citations omitted).

"A fiduciary duty may arise as a matter of law by virtue of the parties' relationship, e.g. attorney-client, or it may arise as a result of the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." Pool v. Farm Bureau Town & Country Ins. Co. of Missouri, 311 S.W. 3d 895, 907 (Mo. App. 2010) (internal quotations and citation omitted). "Fiduciary duty is not created by a unilateral decision to repose trust and confidence; it derives from the conduct or undertaking of the purported fiduciary which is recognized by the law as justifying such reliance." Farmers Ins. Co., Inc. v. McCarthy, 871 S.W.2d 82, 87 (Mo. App. 1994). The mere existence of a business relationship does not give rise to a fiduciary relationship, nor to the presumption of such a relationship. Chmieleski v. City Products Corp., 660 S.W.2d 275, 294 (Mo. App. 1983). See also American United Life Ins. Co. v. Douglas,

---

[3] "'Confidential' and 'fiduciary' are virtually synonymous terms." Goldschmidt, 215 S.W.3d at 221 (citation omitted).

808 N.E.2d 690, 701 (Ind. App. 2004) (citation omitted) ("A fiduciary relationship may not be premised on an arms length transaction resulting in the formation of a contract."). Rather, in order to establish a confidential or fiduciary relationship the following basic elements must be proven: "1) as between the parties, one must be subservient to the dominant mind and will of the other as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, or other things of value which are the property of the subservient person must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic or habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party." Chmieleski, 660 S.W.2d at 294.

Upon consideration, the Court finds that Graham cannot maintain its claim of constructive fraud, as it fails to establish the existence of a confidential or fiduciary relationship between it and H&S. Graham has not shown that it was subservient to H&S. Furthermore, while Graham may have relied on H&S's proposal to purchase the Over Reaming Tool and lease the Sany Drill Rig, Graham is a sophisticated client, and there is no evidence its dealings with H&S were other than entirely arms-length. H&S's Motion to Dismiss with respects to Count V of Plaintiff's Amended Complaint must therefore be granted.[4]

## **CONCLUSION**

---

[4] In its response, Graham makes the argument that a confidential or fiduciary relationship is not required when seeking rescission as a remedy to constructive fraud, citing Evergreen National Corp. v. Carr, 129 S.W.3d 492 (Mo. App. 2004). Graham did not seek rescission as a remedy in its Amended Complaint, however, and therefore the Court will not address the merits of this argument. The Court notes Graham has been granted leave to amend, however, and thus at its option may include rescission as either a requested remedy or a separate count.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (ECF No. 61) is **GRANTED** in part, and Counts IV and V of Graham's Amended Complaint are dismissed without prejudice.

**IT IS FURTHER ORDERED** that Graham is granted twenty (20) days from the date of this Order in which to file an Amended Complaint.


Dated this  2nd   day of March, 2012.


                                                    /s/Jean C. Hamilton  
                                                    UNITED STATES DISTRICT JUDGE