UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GRAHAM CONSTRUCTION SERVICES, INC., | ) ) ) |
| Plaintiff(s), | ) ) |
| vs. | ) ) Case No. 4:11CV1316 JCH |
| HAMMER & STEEL, INC., | ) ) ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Hammer & Steel, Inc.'s Motion for Partial Summary Judgment, filed July 23, 2012. (ECF No. 127). The motion is fully briefed and ready for disposition.

**BACKGROUND**

Plaintiff Graham Construction Services, Inc. ("Graham") is a Minnesota corporation, with its principal place of business located in Minnesota. (Second Amended Complaint ("Compl."), ¶ 1). Defendant Hammer & Steel, Inc. ("H&S") is a Missouri corporation, with its principal place of business located in Missouri. (Id., ¶ 2). Graham first instituted this action in the Northwestern Division of the District Court of North Dakota. (Id., ¶ 5). The District Court of North Dakota transferred the case to this Court pursuant to 28 U.S.C. § 1404(a) on July 27, 2011. (Id.).

On or about October 1, 2009, Graham, as subcontractor, entered into an agreement with Industrial Contract Services, Inc., as general contractor, to provide construction services for the Parshall Raw Water Intake Structure project (the "Project") in Parshall, North Dakota. (Compl., ¶ 6). One of the Graham's responsibilities under the contract was to construct a caisson, or shaft for a foundation. (Id., ¶ 7). Graham consulted with H&S, regarding H&S's ability to supply and lease

drilling equipment for the construction of the caisson. (Id., ¶ 9).[1] H&S had leased equipment to Graham in the past, pursuant to equipment rental agreements. (Id., ¶ 8; Answer, ¶ 8).

According to Graham, H&S, through its agent Todd Maxa[2] ("Maxa"), made representations that it could provide appropriate drilling equipment for the timely construction of the caisson. (Compl., ¶ 10).[3] On or about September 17, 2009, H&S provided Graham with a proposal for the sale of a 168" Max Cut Over Reaming Tool ("Over Reaming Tool"). (Id., ¶ 16). Graham maintains H&S further represented that Graham should lease a Sany Model SR 250 Hydraulic Drilling Rig ("Sany Drill Rig") from H&S, to drive the Over Reaming Tool for the construction of the caisson. (Id.). Graham claims that H&S represented to Graham that the Over Reaming Tool would accomplish the required drilling for the caisson, and that the only drilling rig that could reach the depths required for the Project was the Sany Drill Rig. (Id.). Graham purchased the Over Reaming Tool in December, 2009, and signed an equipment rental agreement ("Rental Agreement") for both the Sany Drill Rig and a 60" Hartfuss heavy duty auger on or about December 3, 2009. (Id., ¶ 19; Answer, ¶ 19).

On or about December 12, 2009, Graham began drilling the pilot shaft with the 60" auger

---

[1] While Graham maintains that as part of the consultation, it supplied H&S with a great deal of information regarding the Project, H&S admits only that Graham provided a copy of soil boring logs. (H&S's Second Amended Answer ("Answer"), ¶ 9).

[2] Maxa is H&S's Upper Midwest Territory Manager, a position he has held for over eighteen years. (H&S's Statement of Uncontroverted Material Facts ("H&S's Facts"), ¶ 4).

[3] The parties agree that prior to the start of construction of the caisson for the Project, Maxa attended a meeting in Bloomington, Minnesota, at the offices of Engineering Partners International, LLC, Graham's consulting engineer on the caisson design. (Compl., ¶ 15; Answer, ¶ 15). H&S denies Graham's assertion that during the meeting Maxa advised Graham on the type and size of drilling equipment required to complete construction of the caisson, assisted in finalizing the design for the excavation pit and drill platform, and provided recommendations to ensure the design of the sheetpile shoring system would accommodate the size of the drill and drilling tools to be supplied by H&S. (Id.).

head leased from H&S. (Compl., ¶ 21). According to Graham, during the drilling a component of the Sany Drill Rig snapped, leaving the auger head embedded approximately 115 feet below the surface of the caisson excavation pit.[4] (Id.). Graham attempted numerous times to retrieve the embedded auger head but was not successful. (Id., ¶ 22). Graham maintains it was forced to relocate the site of the caisson excavation pit and drilling platform, thereby incurring significant expenses and delays. (Id). According to Graham, H&S eventually informed Graham that the Sany Drill Rig could not complete the required drilling for the construction of the caisson, and that it therefore would be removing the Sany Drill Rig from the Project. (Id., ¶ 23).[5]

In its eight-count Second Amended Complaint, filed March 22, 2012, Graham alleges Breach of Contract (Count I); Breach of Express Warranties (Count II); Breach of Implied Warranties (Count III); Fraudulent Inducement: Actual Fraud (Count IV); Constructive Fraud (Count V); Negligent Misrepresentation (Count VI); Reformation (Count VII)[6]; and Quantum Meruit/Unjust Enrichment (Count VIII). (ECF No. 72). H&S filed an Amended Counterclaim on March 29, 2012, asserting claims for Breach of Contract (Count I); Unjust Enrichment (Count II); Breach of Express Warranties (Count III); and Order of Delivery or Value of Augers (Count IV). (ECF No. 73).[7]

---

[4] While Graham blames the failure on faulty equipment supplied by H&S, H&S conversely maintains Graham abused and misused its equipment, thereby causing damage. (Compl., ¶ 21; Answer, ¶ 21).

[5] H&S counters that it removed the Sany Drill Rig from the Project pursuant to the Rental Agreement, because of Graham's misuse and abuse of the drill rig, and because of Graham's failure to continue to make monthly payments under the terms of the Rental Agreement. (Answer, ¶ 23).

[6] In its response to the instant motion, Graham stipulates to dismissal of its claim for reformation. (See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment ("Graham's Opp."), P. 2).

[7] In its Amended Counterclaim, H&S maintains Graham has failed to make required payments under the Rental Agreement, and has failed to return both the 60" Hartfuss heavy duty auger and a 36" heavy duty auger rented from H&S. (Amended Counterclaim, ¶¶ 8, 12). H&S

As stated above, H&S filed the instant Motion for Partial Summary Judgment on July 23, 2012, seeking dismissal of Counts II through V of the Second Amended Complaint. (ECF No. 127). H&S further seeks summary judgment on its affirmative claim for the value of the 60-inch auger. (Id.).

**SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson,

---

maintains Graham buried both augers when it abandoned and filled in the caisson shaft for safety reasons. (H&S Facts, ¶ 24).

- 4 -

477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

**I.     Can Parol Evidence Be Introduced To Alter The Terms Of The Rental Agreement?**

In its Motion for Partial Summary Judgment, H&S requests a declaration that the December 3, 2009, Rental Agreement for the Sany Drill Rig and Hartfuss 60" auger is valid and enforceable as written. (H&S's Memorandum in Support of Motion for Partial Summary Judgment ("H&S's Memo in Support"), P. 3). "Under Missouri law, a party who signs a document after having an opportunity to review its contents is, absent fraud or duress, bound by its terms." Monsanto Co. v. Swann, 308 F.Supp.2d 937, 943 (E.D. Mo. 2003) (citations omitted). Further, a signatory to a document is bound by its terms, irrespective of whether he or she actually read the document. Midwest Printing, Inc. v. AM Intern., Inc., 108 F.3d 168, 170 (8th Cir. 1997); U.S. for Use of Bussen Quarries, Inc. v. Thomas, 938 F.2d 831, 833 (8th Cir. 1991). In the instant case, it is undisputed that Quint McDermand[8] ("McDermand") had the opportunity to read the additional terms and conditions of the Rental Agreement. That he apparently chose not to do so does not provide a basis for Graham to avoid the contract's provisions.

The Court still must consider, however, whether H&S's alleged prior oral statements may be introduced to contradict the unambiguous written terms of the Rental Agreement. "The parol evidence rule prohibits evidence of prior or contemporaneous agreements that vary or contradict the terms of an unambiguous and complete contract absent fraud, common mistake, accident, or erroneous omission." Lion Petroleum of Missouri, Inc. v. Millennium Super Stop, LLC, 2008 WL

---

[8] Quint McDermand was Graham's Senior Project Manager for the Project, with over 23 years of experience in the construction industry. (H&S's Facts, ¶ 6).

3010789, at *5 (E.D. Mo. Aug. 1, 2008) (citing Celtic Corp. v. Tinnea, 254 S.W.3d 137, 142 (Mo.Ct.App. 2008) (per curiam)). "Parol evidence may not be used to create ambiguity in an otherwise unambiguous contract." Id. (citation omitted). "Thus, fraud can be proved by parol evidence, but 'in the absence of fraud...a valid written contract merges all prior and contemporaneous negotiations on the subject.'" Id. (quoting Comp & Soft, Inc. v. AT&T Corp., 252 S.W.3d 189, 196-97 (Mo.Ct.App. 2008)).

Here, the parties executed a Rental Agreement that included the following integration clause: "This is the entire agreement between the parties, except as otherwise expressly stated on page 1 hereof. There are no other oral or written promises, terms, conditions, representations of quality of fitness for any purpose, or warranties express or implied, concerning the equipment, other than those contained herein in writing." (Rental Agreement, attached as Exh. A to H&S's Answer, ¶ 19). Graham has not identified an ambiguity in the Rental Agreement that would allow the Court to look to parol evidence to vary this term. Bank of Kirksville v. Small, 742 S.W.2d 127, 133 (Mo. 1987) (parol evidence is admissible to determine the intent of the parties where an ambiguity exists within the contract). Instead, Graham argues that this Court may look beyond the terms of the Rental Agreement because it was the victim of fraudulent and/or negligent oral promises by H&S, that improperly induced Graham to execute the Rental Agreement. The Court thus turns to consideration of whether the evidence before it supports a claim for fraudulent or negligent inducement to execute the Rental Agreement, sufficient to constitute an exception to the parol evidence rule. Id. (parol evidence rule does not forbid the use of evidence to show that the agreement was entered into as a result of fraud).

### A. Count IV: Fraudulent Inducement: Actual Fraud

In Count IV of its Second Amended Complaint, Graham asserts that because it is not an

expert on drilling equipment, it sought and relied on H&S's recommendations for appropriate drilling equipment for the Project. (Compl., ¶ 56). Graham maintains that during August, and September, 2009, both in emails and at the meeting in Bloomington, Maxa represented that Graham should lease the Sany Drill Rig to drive the Over Reaming Tool, and that "this and the other drilling equipment Graham proceeded to purchase and lease from H&S was the appropriate drilling equipment that could timely complete the construction of the caisson for the Project work." (Id., ¶ 57). Graham continues to allege that Maxa and other H&S employees knew or reasonably should have known these assertions were false, but nevertheless intended that Graham would rely on the representations and lease the drilling equipment, which it did to its detriment. (Id., ¶¶ 59-65). As relief, Graham seeks either rescission of its contract with H&S, or monetary damages. (Id., ¶ 66).

Under Missouri law[9], in order to succeed on its claim for fraudulent inducement Graham must prove the following elements: "(1) that [H&S] made certain material representations to [Graham]; (2) such representations were false when made; (3) that [H&S] knew the representations were false; (4) that the representations were made with the purpose of deceiving [Graham]; (5) that [Graham] was, in fact, deceived; (6) [Graham] reasonably relied on the representations in signing the [rental and/or purchase agreements]; and (7) [Graham] suffered damage as a proximate result of the fraudulent misrepresentations." Bracht v. Grushewsky, 448 F.Supp.2d 1103, 1110 (E.D. Mo. 2006)

---

[9] The parties apparently agree that Missouri law governs their contract disputes, pursuant to a valid choice-of-law provision in the Rental Agreement. In deciding to apply the choice of law provision to Graham's tort claims as well, the Court adopts the reasoning set forth in Pissed Away N6VC, LLC v. Stricker, 2012 WL 393418, at *2 (W.D. Mo. Feb. 6, 2012). See also Major v. McCallister, 302 S.W.3d 227, 231-232 (Mo. App. 2009) (internal quotation marks and citation omitted) (noting it would enforce a contract clause, "be it arbitration, forum selection, or some other provision," for tort claims "arising directly out of a dispute regarding the terms of the parties' contractual relation, or where the statements giving rise to a tort claim are integrally linked to the contractual relation between the parties."); Republic Credit Corp. v. Rance, 172 F.Supp.2d 1178, 1183 (S.D. Iowa 2001).

(citing Trotter's Corp. v. Ringleader Restaurants, Inc., 929 S.W.2d 935, 939 (1996)).[10] "As with any cause of action, '[a] failure to establish any one of the essential elements of fraud is fatal to recovery.'" Argus Health Systems, Inc. v. Benecard Services, Inc., 2011 WL 5570064, at *2 n. 4 (W.D. Mo. Nov. 16, 2011) (quoting Emerick v. Mutual Benefit Life Insurance Co., 756 S.W.2d 513, 519 (Mo. 1988) (*en banc*)).

Upon consideration the Court finds that, even assuming H&S employees made the representations at issue, summary judgment is nevertheless appropriate because Graham cannot establish it reasonably relied upon H&S's alleged oral guarantee that the drilling equipment at issue was "the appropriate drilling equipment that could timely complete the construction of the caisson for the Project work." "A party cannot allege reliance on promises made in the course of negotiations, whether written or oral, true or false, if the party subsequently enters into a written agreement silent on the matter." Lion Petroleum, 2008 WL 3010789, at *6 (citing Toghiyany v. AmeriGas Propane, Inc., 309 F.3d 1088, 1092 (8th Cir. 2002) (upholding summary judgment for defendant where plaintiff alleged that it entered into a contract in reliance on the promise that a five-year commitment would govern the relationship, because no such provision was found in the subsequent written document)). If assurances that the equipment at issue would timely and properly complete construction of the caisson were material to Graham's decision to enter into the Rental Agreement, one would have expected Graham, a highly sophisticated construction contractor[11], to

---

[10] "Fraud in the inducement is a subset of fraudulent misrepresentation, applicable where a fraudulent misrepresentation leads another to enter into a transaction with a false impression of the risks, duties, or obligations involved." Lion Petroleum, 2008 WL 3010789, at *5 (citations omitted).

[11] Graham does not dispute H&S's assertion that it is a wholly owned subsidiary of the Graham Group, which in 2010 was the fifth largest construction company in Canada, with revenue of $1.8 billion. (See H&S's Facts, ¶ 2).

have made sure that these terms were included in the written agreement." Id. Instead, Graham signed a Rental Agreement containing the following provisions, seemingly at odds with its claim of reliance:

> 14. **WARRANTIES.** Lessee (i.e., Graham) acknowledges that Lessee has selected the equipment leased hereunder based entirely and solely on Lessee's judgment and Lessee understands and agrees that any IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE EXPRESSLY EXCLUDED.
>
> 19. **BINDING EFFECT/ENTIRE AGREEMENT.**...This is the entire agreement between the parties, except as otherwise expressly stated on page 1 hereof. There are no other oral or written promises, terms, conditions, representations of quality of fitness for any purpose, or warranties express or implied, concerning the equipment, other than those contained herein in writing, if any.

(Rental Agreement, ¶¶ 14, 19). Under these circumstances, the Court finds Graham fails to demonstrate justifiable reliance on H&S's alleged misrepresentations, and so its claim for fraud/fraudulent inducement must fail. Lion Petroleum, 2008 WL 3010789, at *6. See also Cook v. Little Caesar Enterprises, Inc., 210 F.3d 653, 658 (6th Cir. 2000) (cited with approval in Toghiyany, 309 F.3d at 1093) ("Reliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement."); Argus, 2011 WL 5570064, at *5-6.

### B. Count V: Constructive Fraud

In Count V of its Second Amended Complaint, Graham asserts H&S committed "constructive fraud/fraudulent inducement." (Compl., ¶ 68). The claim in Count V is based on the same alleged misrepresentation as in Count IV, i.e., "that H&S examined the geotechnical information for the Project and assured and represented to Graham through Maxa that the drilling equipment, including the Sany Drill Rig, was the appropriate drilling equipment that could timely complete the construction of the caisson for the Project work." (Id., ¶ 68(a)).

"The elements required to properly plead a claim of fraudulent representation based on

constructive fraud are identical to those required for pleading a case of fraudulent representation based on actual fraud except it is not necessary for a plaintiff to plead and prove that the defendant had knowledge of the falsity of the representation but only that the defendant was ignorant of its truth." Northwest Hamilton Lake Development Co. L.L.C. v. American Federal, Inc., 2006 WL 381499, at *7 (E.D. Mo. Feb. 16, 2006) (citations omitted). Since Graham has failed to show any dispute of material fact regarding the element of reasonable reliance, "whether or not [H&S] was ignorant of the truth of the alleged misrepresentations is irrelevant." Id. Graham thus fails to set forth facts sufficient as a matter of law to support a claim of constructive fraud, and so Count V must be dismissed. Id.

### C. Negligent Misrepresentation

In Count VI of its Amended Complaint, Graham asserts H&S is liable for negligent misrepresentation, as it "assured and represented to Graham that the drilling equipment, including the Sany Drill Rig, was the appropriate drilling equipment that could timely complete the construction of the caisson for the Project work." (Compl., ¶ 72). Under Missouri law, "[t]he elements of negligent misrepresentation are: (1) speaker supplied information in the course of his business or because of some other pecuniary interest; (2) due to speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) listener justifiably relied on the information; and (5) that as a result of listener's reliance on the statement, he/she suffered a pecuniary loss." Harris v. Smith, 250 S.W.3d 804, 808 (Mo. App. 2008) (internal quotations and citation omitted). As with fraudulent misrepresentation, a party's failure to prove any one of the elements of negligent misrepresentation is fatal to a claim dependent on that theory. Id. at 809.

Once again, Graham has not set forth facts sufficient as a matter of law to support a claim of negligent misrepresentation, as it has failed to show any dispute of material fact regarding the element of justifiable reliance. Count VI must therefore be dismissed.

### D. Conclusion

In light of the foregoing, parol evidence may not be introduced to alter the terms of the Rental Agreement, and so it stands as a fully integrated and unambiguous document.[12] H&S's request that the December 3, 2009, Rental Agreement for the Sany Drill Rig and Hartfuss 60" auger be declared valid and enforceable as written will therefore be granted.

## II. Contract Claims

### A. Damages Limitation

In its Motion for Partial Summary Judgment, H&S asserts Graham's damages are limited to payments made under the rental agreement. (H&S's Memo in Support, PP. 16-21). H&S bases this contention on the following provisions in the Rental Agreement:

> **6. Non-Working Time.**.....No "back charges" for job delay or other damages shall apply against Lessor.
>
> **16. Limitation of Remedies.** Lessor's entire liability and Lessee's exclusive remedy is set forth in this Section.
>
> In all situations involving performance or nonperformance of the equipment leased hereunder, the Lessee's remedy is (1) the adjustment or repair of the equipment or replacement of it by Lessor, at Lessor's option, or (2) if Lessor, after repeated efforts, is unable to restore the equipment to good working order or to replace it, all as warranted, the Lessee shall be entitled to recover actual damages to the limits set forth in this section.

---

[12] In its response, Graham further asserts the Missouri Uniform Commercial Code ("UCC") allows parol evidence of "consistent additional terms." (Graham's Opp., P. 9, citing Mo.Rev.Stat. § 400.2-202). As noted above, however, the Court does not find the alleged assurances at issue constitute consistent additional terms; rather, they directly contradict the express terms of the Rental Agreement, and thus are barred.

- 11 -

> Lessor's liability for damages to the Lessee for any cause whatsoever, except as otherwise stated in this section, and regardless of the form of action, whether in contract or tort including negligence shall be the total lease or rental charges for the specific piece of equipment that caused the damages or that are the subject matter of, or are directly related to, the cause of action. Such charges shall be those in effect for the specific piece of equipment when the cause of action arose....
>
> In no event will Lessor be liable for any damages caused by Lessee's failure to perform Lessee's responsibilities or for any lost profits, lost savings, incidents, damages or other consequential damages, even if Lessor has been advised of the possibility of such damages, or for any claim by Lessee based on any third party claim.

(Rental Agreement, ¶ 16).

"Disclaimers of consequential and incidental damages in commercial contracts are generally enforceable under Missouri law." Trinity Products, Inc. v. Burgess Steel, L.L.C., 486 F.3d 325, 332 (8th Cir. 2007) (citation omitted). The Missouri UCC bars damage disclaimers, however, "where 'circumstances cause an exclusive or limited remedy to fail of its essential purpose,' or where the exclusion of consequential damages 'is unconscionable.'" Id. (quoting Mo.Rev.Stat. § 400.2-719(2), (3)). See also Mo.Rev.Stat. § 400.2A-503 (noting a lease agreement may limit or alter the measure of damages recoverable under the Missouri UCC, and such limitations are valid unless "circumstances cause an exclusive or limited remedy to fail of its essential purpose, or provision for an exclusive remedy is unconscionable.").[13]

Upon consideration, the Court does not find the damages limitation provision in the Rental Agreement, entered into as it was between two sophisticated business entities, to be unconscionable. Nor does the Court find the provision failed of its essential purpose under the circumstances, as it

---

[13] Graham argues neither exception in its response to H&S's motion, instead asserting only that H&S would not be able to avail itself of the contractual limitation of liability if Graham prevailed at trial on its [now dismissed] claims of fraudulent inducement. (Graham's Opp., PP. 25-27).

provided first for repair or replacement of the equipment, and then for actual damages. See <u>Foam Supplies, Inc. v. Dow Chemical Co.</u>, 2008 WL 3159598, at *3, 6 (E.D. Mo. Aug. 4, 2008) (declining to find that a limitation of liability provision providing for replacement or repayment of the purchase price paid for the products at issue failed of its essential purpose under Michigan law, as "[if] this limitation on liability clause fails of its essential purpose, [the Court has] difficulty imagining a situation where a clause restricting consequential damages for a breach of contract could ever be found to be valid."). The Court thus will grant H&S's Motion for Partial Summary Judgment,to the extent it seeks to limit Graham's remedies to those provided for in the Rental Agreement.[14]

### B. **Warranty Claims**

H&S next seeks summary judgment on Graham's claims of breach of express and implied warranties. (H&S's Memo in Support, PP. 21-24). The Court will consider the claims in turn.

#### 1. **Express Warranties**

In Count II of its Complaint, Graham asserts as follows:

34. The Rental Agreement contained express warranties for the drilling equipment, including the Sany Drill Rig, that provided that the equipment was appropriate for the Project.

35. H&S also expressly warranted to Graham that the drilling equipment, including the Sany Drill Rig, would work for the purposes for which it was intended on the Project.

(Compl., ¶¶ 34, 35). Graham maintains H&S breached its express warranties, by supplying drilling equipment that could not complete the required work associated with the construction of the caisson for the Project. (Id., ¶ 38).

Upon review, the Court agrees with H&S that the Rental Agreement does not expressly

---

[14] The parties are free at trial to present evidence as to the appropriate measure of damages allowable under the Rental Agreement.

- 13 -

warrant the drilling equipment "was appropriate for the Project."[15]  H&S's Motion for Summary Judgment on Count II of Graham's Complaint will therefore be granted.

### 2. Implied Warranties

With respect to implied warranties, the Rental Agreement provides as follows: "Lessee acknowledges that Lessee has selected the equipment leased hereunder based entirely and solely on Lessee's judgment and Lessee understands and agrees that any IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE EXPRESSLY EXCLUDED." (Rental Agreement ¶ 14 (emphasis in original)).  The Court finds this language complies with the requirements of Mo.Rev.Stat. § 400.2A-214(2); in other words, it was in writing, it was conspicuous, and it mentions merchantability.  H&S thus effectively disclaimed all implied warranties in the Rental Agreement, and so Count III of Graham's Complaint must be dismissed.

## III. H&S's Counterclaim

As noted above, in Count IV of its Amended Counterclaim H&S seeks an order requiring delivery of the two heavy duty augers it leased to Graham, or in the alternative, compensation for their fair market value.  (Amended Counterclaim, ¶¶ 27-30).  In its Motion for Partial Summary Judgment, H&S asserts it is entitled to judgment as a matter of law on its claim for reimbursement for the 60" auger.  (H&S's Memo in Support, P. 30).  Specifically, H&S notes that pursuant to paragraph nine of the Rental Agreement, Graham is responsible for all risk of loss or damage to the rented equipment, and must immediately pay H&S for any such loss or damage.  (Id.).  H&S asserts

---

[15] In its response, Graham asserts Maxa created the express warranty when he assured McDermand that the drilling system it was selling and leasing would be able to complete the Parshall project.  (Graham's Opp., PP. 28-29).  The Court rejects this argument for two reasons: First, because as noted above any evidence of H&S's alleged oral guarantees is barred by the parol evidence rule, and second, because the Rental Agreement specifically states that there are no other warranties, express or implied, concerning the equipment, other than those contained therein in writing.  (Rental Agreement, ¶ 19).

- 14 -

Graham has not returned the Hartfuss 60" auger, and has indicated it will not attempt to recover the auger. (Id.). H&S thus maintains it is entitled to judgment in its favor against Graham for $52,387.00, the value of the 60" Hartfuss auger.[16] (Id.).

Upon consideration, the Court agrees Graham fails to present a disputed issue of material fact, sufficient to defeat H&S's Motion for Summary Judgment on this portion of its Amended Counterclaim. In other words, the Court agrees with H&S that under the Rental Agreement provision at issue, Graham assumed the risk of loss for the 60" auger no matter the cause. This portion of H&S's Motion for Partial Summary Judgment must therefore be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Hammer & Steel, Inc.'s Motion for Partial Summary Judgment (ECF No. 127) is **GRANTED**, in accordance with the foregoing.

**IT IS FURTHER ORDERED** that Counts II through VI of Graham's Second Amended Complaint are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that judgment is entered in favor of H&S on the portion of Count IV of its Amended Counterclaim dealing with the Hartfuss 60" auger.

Dated this   7th   day of November, 2012.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[16] Graham does not dispute the value of the auger in its response.